**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRAYAN ALEXANDER BAUTISTA DIAZ, Petitioner, v. FERETI SEMAIA, et al., Respondents. | Case No. 5:26-cv-03789-SP **MEMORANDUM OPINION AND ORDER GRANTING PETITION** |

**I.**

**INTRODUCTION**

On July 9, 2026, petitioner Brayan Alexander Bautista Diaz, a federal immigration detainee, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition" or "Pet."). Docket no. 1. Petitioner is being held at the U.S. Immigration and Customs Enforcement ("ICE") Processing Center in Adelanto, California ("Adelanto"). Petitioner contends his detention violates his right to procedural and substantive due process under the Fifth Amendment. Petitioner also contends respondents violated his Fourth Amendment right to be free from unreasonable seizure. Petitioner seeks immediate release from immigration custody.

On July 16, 2026, respondents filed an Answer. Docket no. 8. Petitioner filed a Traverse on July 21, 2026. Docket no. 11.

For the reasons discussed below, petitioner's procedural due process claim merits habeas relief. The court therefore grants the Petition and issues a writ of habeas corpus requiring petitioner's immediate release from immigration custody.

## II.

## BACKGROUND

Petitioner is a native and citizen of Mexico. Pet. ¶¶ 1, 17.[1] Petitioner entered the United States in April 2018. *Id.* ¶ 19; *see id.*, Ex. 8. ICE encountered and apprehended petitioner at the port of entry and processed him as an expedited removal with credible fear. *See id.*, Ex. 8. On April 30, 2018, petitioner was provided a credible fear interview, at which he was found to be credible. *See* Answer, Ex. 3. Petitioner was released from immigration custody on parole on October 23, 2018. Answer, Ex. 4; *see* Pet., Ex. 2.

Petitioner has lived continuously in the United States since his release from immigration custody. Pet. ¶¶ 18-19. Petitioner is married to a U.S. citizen and has an approved Form I-130 (Petition for Alien Relative) and a pending Form I-485 (Application to Register Permanent Residence or Adjust Status). *Id.* ¶¶ 23, 25, Exs. 5-6.

Petitioner has a criminal history, including a 2021 arrest for infliction of corporal injury on a spouse/cohabitant and a 2023 misdemeanor conviction for battery on a peace officer. *See* Pet., Ex. 8. On August 20, 2025, petitioner was arrested for evading a police officer. Pet. ¶ 27, Ex. 3. The police released petitioner due to insufficient grounds for making a criminal complaint against him. *See id.*, Ex. 3.

---

[1] The Petition is signed only by petitioner's counsel and it is not verified by petitioner. The court accepts the facts alleged in the Petition: (1) for the purposes of Part II of this opinion if uncontested; (2) if supported by documents submitted by petitioner as part of the Petition; or (3) if the information could be within counsel's personal knowledge.

An ICE officer and U.S. Drug Enforcement Administration agent arrested petitioner after he was released from police custody on August 21, 2025 at 9:20 a.m. *Id.* ¶¶ 20-21; *see id.*, Ex. 8. Petitioner did not have notice or an individualized custody determination prior to his arrest. *See id.* ¶ 61. The ICE officers did not present a warrant at the time of arrest. *Id.* ¶ 29. The arrest warrant in the record reflects it was signed on August 21, 2025 at 10:23 a.m. *See id.*, Ex. 7. The Notice of Custody, signed at 3:02 p.m. on August 21, 2025, indicates petitioner would be released on $12,000 bond. *Id.* ¶ 28; *see id.*, Ex. 7. On August 28, 2025, ICE conducted a custody redetermination and revoked prior bond determination. *See* Answer, Ex. 4.

On February 26, 2026, petitioner appeared before an immigration judge for a bond hearing pursuant to *Rodriguez v. Holder*, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013), *aff'd in part, rev'd in part sub nom. Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), *rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018). Answer at 2-3, Ex. 6. Petitioner withdrew his request for a *Rodriguez* hearing in order to have more time to prepare. *See id.*

Petitioner remains detained at Adelanto where he has not been provided a glucose monitor to manage his diabetes. Pet. ¶ 36. On September 18, 2026, an immigration judge ordered petitioner to be removed. *See* https://acis.eoir.justice.gov/en/. Petitioner has appealed the decision to the Board of Immigration Appeals ("BIA"), so the removal order is not final as of the date of this order. *See id.*

## III.

## DISCUSSION

Petitioner raises three claims for relief: (1) his detention violates his procedural due process rights under the Fifth Amendment; (2) his detention violates his substantive due process rights under the Fifth Amendment; and (3) his initial arrest constituted an unreasonable seizure under the Fourth Amendment. *Id.* ¶¶ 49-84.

As an initial matter, respondents argue petitioner appears to be a member of the Bond Eligible Class certified in *Bautista v. Santacruz*, 813 F. Supp. 3d 1084 (C.D. Cal.

2025), *judgment entered sub nom. Maldonado Bautista v. Noem*, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025), and is therefore only entitled to a bond hearing.[2] Answer at 4. Given the evidence petitioner was encountered and apprehended either upon entry or shortly thereafter and granted parole, petitioner is not a member of the Bond Eligible Class certified in *Maldonado-Bautista*.

**A. <u>This Court Has Jurisdiction Over the Claims in the Petition</u>**

A federal district court may issue a writ of habeas corpus when a petitioner demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Here, petitioner argues he should be released from respondents' custody because his detention violates the Due Process Clause of the Fifth Amendment. *See* Pet. ¶¶ 49-73. He has therefore properly invoked this court's habeas jurisdiction.

The INA contains several provisions that limit judicial review of immigration-related matters, including most notably 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g). While § 1252(g) strips the court of jurisdiction to hear any claim "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders," the Supreme Court has clarified that the language of § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions," but instead refers "to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (citation omitted). The applicability of § 1252(b)(9), which works in conjunction with § 1252(a)(5) to channel certain

[2] The Bond Eligible Class certified in *Bautista* is defined to include: "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Bautista*, 813 F. Supp. 3d at 1127.

immigration-related matters to the Courts of Appeals, has been limited in similar fashion. *See Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020) (citation omitted); *see also Gonzalez v. U.S. Immigr. & Customs Enf't*, 975 F.3d 788, 810-11 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction . . . because claims challenging the legality of detention . . . are independent of the removal process.") (citations omitted). Because petitioner is challenging his detention rather than any of the three actions listed above, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g) do not strip this court of jurisdiction.

**B. <u>Administrative Exhaustion Is a Prudential Requirement</u>**

Respondents contend petitioner must utilize the administrative process and exhaust his claims by appealing to the BIA. Response at 4-7. As noted above, petitioner has appealed his removal order to the BIA, but that is not at issue here. Respondents contend petitioner may request a *Rodriguez* hearing at any time, and may thereafter appeal any decision to the BIA.

The INA contains an administrative exhaustion requirement. *Puga v. Chertoff*, 488 F.3d 812, 814-15 (9th Cir. 2007) (citing 8 U.S.C. § 1252(d)(1)). But "[t]he exhaustion requirement is prudential, rather than jurisdictional, for habeas claims." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (citation omitted); *Singh*, 638 F.3d at 1203 n.3 ("On habeas review under § 2241, exhaustion is a prudential rather than jurisdictional requirement."). "Courts may require prudential exhaustion if '(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Puga*, 488 F.3d at 815 (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "Nonetheless, even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile

gesture, irreparable injury will result, or the administrative proceedings would be void.'" *Hernandez*, 872 F.3d at 988 (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)); *see N.A. v. Warden, Adelanto Det. Facility*, 2026 WL 734587, at *6 (C.D. Cal. Feb. 20, 2026) ("Because exhaustion is not jurisdictional, courts have discretion to waive a prudential requirement.") (internal quotation marks and citation omitted).

Assuming the *Puga* factors weigh in favor of an exhaustion requirement, the court here exercises its discretion to waive the exhaustion requirement because the first and third *Laing* factors apply. Although petitioner could appeal any decision to detain him by an immigration judge, there has been no decision to date, and it is not clear how petitioner would appeal respondents' failure to provide him with a hearing at the time they took him into custody. Although petitioner could obtain a *Rodriguez* hearing, as discussed below, that would not remedy his failure to have a hearing at the time he was detained. As such, the administrative remedies are inadequate and not efficacious. A bond hearing now would not be an adequate remedy for petitioner's potential prolonged detention. Accordingly, the court exercises its discretion to waive the exhaustion requirement to the extent it applies here.

**C. <u>Petitioner's Re-detention Without Adequate Procedural Protections Violated Due Process</u>**

The Due Process Clause of the Fifth Amendment prohibits the government from depriving an individual of liberty without due process of law. U.S. Const. amend. V. "Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Federal courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454,

460 (1989) (citations omitted); *see also Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022) (applying the two-step inquiry).

**1. Petitioner Has a Protected Liberty Interest**

The first step asks whether respondents have interfered with petitioner's protected liberty interest. Petitioner argues he has a liberty interest in his release from immigration custody. *See* Pet. ¶¶ 54-58.

Conditional release from custody may give rise to a protected liberty interest. *Young v. Harper*, 520 U.S. 143, 147-49 (1997). "Even when a statute allows the government to arrest and detain an individual, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *4 (E.D. Cal. Sept. 18, 2025) (citing *Young*, 520 U.S. at 147-49); *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *see Morrissey v. Brewer*, 408 U.S. 471, 482 (1972)). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (citing *Morrissey*, 408 U.S. at 482).

In *Morrissey*, the Supreme Court explained that "[t]he liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime." 408 U.S. at 482. "Subject to the conditions of [their] parole, [a parolee] can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life." *Id.* "[T]he liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.*

This was petitioner's situation. Petitioner arrived in the United States in 2018 and has resided here ever since. Pet. ¶ 19. Petitioner is married to a U.S. citizen and has a pending application for adjustment of status. *Id.* ¶¶ 23, 25, Exs. 5-6. Petitioner

established a life for himself in the United States while released on parole and therefore has acquired a protected liberty interest in his release from immigration custody. *See e.g., Meneses v. Santacruz*, 811 F. Supp. 3d 1158, 1163 (C.D. Cal. 2025); *Mody v. Warden*, 2026 WL 51976, at *5-6 (C.D. Cal. Jan. 5, 2026); *Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("petitioner has a liberty interest in his continued release on bond"); *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1046 (E.D. Cal. 2025); *R.D.T.M.*, 2025 WL 2686866, at *4-5; *Esquivel Pacheco v. LaRose*, 2026 WL 242300, at *6 (S.D. Cal. Jan. 29, 2026); *Osmonaliev v. Cantu*, 2025 WL 3637397, at *1 (D. Ariz. Dec. 16, 2025); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321-22 (W.D. Wash. 2025).

**2. <u>Petitioner Was Entitled to a Pre-Deprivation Hearing Prior to Detention Under the Due Process Clause</u>**

"To determine what procedures are constitutionally sufficient to protect a liberty interest, the Court applies the three-part test established in *Mathews v. Eldridge* . . . ." *Pinchi*, 792 F. Supp. 3d at 1033 (citation omitted); *see also Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying the *Mathews* factors in the immigration context). The three factors considered by the court under *Mathews* are:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335 (citation omitted).

The first factor examines petitioner's private interest, here his interest in being free from detention. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted);

*Hernandez*, 872 F.3d at 993 (holding it "is beyond dispute" that "freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause'"). Petitioner has lived in the United States since his arrival, is married, and established a normal life. Pet. ¶¶ 19, 23. As such, his personal interest in remaining out of immigration custody is extremely high.

The second factor examines the risk of erroneous deprivation of petitioner's liberty interest, as well as the value of additional procedural safeguards. "The risk of an erroneous deprivation of liberty is high where, as here, petitioner has not received any bond or custody redetermination hearing." *R.D.T.M. v. Wofford*, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) (citation modified). The Supreme Court has made clear that immigration proceedings are civil in nature and must be "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Therefore, immigration detention must be justified by one of two regulatory goals – preventing risk of flight or danger to the community. *Id.* Respondents, in effect, already made such a determination with respect to petitioner when they decided not to detain him in the first place. See 8 C.F.R. § 212.5(b) (requiring that a non-citizen "present neither a security risk nor a risk of absconding" before being granted parole). Since then, petitioner has had encounters with law enforcement, including a misdemeanor conviction for battery on a peace officer. Whether that should alter respondents' prior determination that petitioner is suitable for release is a matter that should have been addressed at a bond hearing. Thus, "[g]iven the absence of any procedural safeguards to determine if [petitioner's] detention was justified, the probable value of additional procedural safeguards, i.e., a bond hearing, is high." *R.D.T.M.*, 2025 WL 2686866, at *6 (citation and internal quotation marks omitted); *Mourey v. Bowen*, 2026 WL 467567, at *5 (C.D. Cal. Jan. 31, 2026) (same).

Finally, the third factor examines the government's interest, which here would be its interest in detaining petitioner absent additional process. As other courts have repeatedly recognized, "there is no meaningful countervailing government interest that supports detaining previously paroled noncitizens like petitioner without a pre-detention

hearing." *Meneses*, 811 F. Supp. 3d at 1164; *see also R.D.T.M.*, 2025 WL 2686866, at *6 (collecting cases); *Pinchi*, 792 F. Supp. 3d at 1036; *Hasratyan v. Bondi*, 2026 WL 288909, at *4 (C.D. Cal. Feb. 2, 2026); *Yataco v. Warden, Adelanto Det. Facility*, 2025 WL 4065463, at *6 (C.D. Cal. Dec. 26, 2025). The cost of providing a pre-deprivation hearing to petitioner is minimal and custody hearings are routinely conducted by Immigration Courts. *See Singh v. Bowen*, 2025 WL 3251437, at *7 (C.D. Cal. Nov. 21, 2025) (citations omitted); *see also Pinchi*, 792 F. Supp. 3d at 1036. Moreover, because petitioner was once found not to be a danger to the community or a flight risk by respondents, the government has minimal interest in detaining him at all, absent some showing of material changed circumstances. *See Hernandez*, 872 F.3d at 994 ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions.").

In sum, given petitioner's strong interest in being free from immigration detention, the high risk of erroneous deprivation of her liberty interest, the high value of additional procedural safeguards, and the lack of government interest in detaining petitioner without additional process, all three of the *Mathews* factors strongly favor petitioner. Therefore, the government's detention of petitioner without adequate process violated petitioner's right to procedural due process under the Fifth Amendment. Because petitioner's detention was unlawful, and because a *Rodriguez* hearing now is insufficient to cure this unlawful detention, the proper remedy is release from custody. *See Singh*, 2025 WL 3251437, at *9; *Yataco*, 2025 WL 4065463, at *7; *see also Faizyan v. Casey*, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 17, 2025) (collecting cases).

**D. <u>Petitioner's Remaining Claims</u>**

Petitioner also argues that respondents have violated his Fifth Amendment right to substantive due process and his Fourth Amendment right to be free from unreasonable seizures. Pet. ¶¶ 63-84. Because the court has already concluded that petitioner is entitled to release on procedural due process grounds, it need not address petitioner's

remaining claims. Petitioner may raise the claims again if he is subject to any future detention.

## IV.

## ORDER

IT IS THEREFORE ORDERED that: (1) Judgment will be entered granting the Petition; (2) respondents shall immediately release petitioner Brayan Alexander Bautista Diaz (A# 215-547-252) from immigration custody; (3) respondents shall return any confiscated property and documents to petitioner upon his release; and (4) respondents shall file a status report no later than **October 21, 2026,** confirming that petitioner has been released from respondents' custody.

Dated: October 16, 2026

SHERI PYM
United States Magistrate Judge